UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CHERYL AUCOIN, ET AL                                    CIVIL ACTION

VERSUS                                                  NO.  09-3690

EXXON MOBIL CORP., ET AL                                SECTION "N" (5)

## ORDER AND REASONS

Presently before the Court is Defendant Exxon Mobil Corporation's "Motion for Partial Summary Judgment on Punitive Damages" (Rec. Doc. 65).  For the reasons stated herein, **IT IS ORDERED** that the motion is **DENIED**.

## Background

On May 23, 2008, Cheryl Aucoin, along with 68 other plaintiffs, filed a petition for damages in the Civil District Court for the Parish of Orleans.[1]  Defendant Exxon Mobil Oil Corporation ("Exxon") removed the action on May 29, 2009.  On September 2, 2009, this Court denied Plaintiffs' motion seeking remand to state court.

Plaintiffs allege personal injuries and damages to property from alleged exposure to naturally occurring radioactive materials ("NORM").  Specifically, Plaintiffs claim they were exposed to NORM as a result of crust, known as "scale", that was removed from used oilfield pipe sent for cleaning by several oil companies, including Exxon, to various pipe-cleaning contractor

---

[1]      Plaintiffs' Second Supplemental and Amending Petition added 42 new plaintiffs, thus bringing the number of plaintiffs up to 110.  *See* Rec. Doc.1.

1

defendants, including Intracoastal Tubular Services, Inc. ("ITCO"), who operated facilities in Louisiana and other states.   Plaintiffs are individuals (or their survivors) who worked at the pipeyards, family members claiming secondary exposure, and persons who lived near the pipeyards. Plaintiffs seek awards of damages for personal injury, medical monitoring, and/or remediation of their allegedly contaminated properties.   Plaintiffs also seek punitive damages.

With its motion for partial summary judgment, Exxon seeks dismissal with prejudice of Plaintiffs' claims for punitive damages asserted under now repealed Louisiana Civil Code article 2315.3.   Exxon argues that these claims should be dismissed because, according to Exxon, it "already has been punished in *Grefer v. Alpha Technical* for exactly the same alleged conduct, causing exactly the same alleged harm, to exactly the same persons."[2]  Given that, Exxon contends, federal constitutional due process principles prevent a second punitive damages award against it here.

The *Grefer* action to which Exxon refers involved a large tract of commercial property in Harvey, Louisiana, that the Grefer family had owned since 1875.  Between 1968 and 1992, ITCO leased the Grefer property to store and clean pipes used in offshore oil exploration. In June 1992, because of a decline in business, ITCO informed the Grefers that it wanted to cease its business operations at the end of August, and asked that it be allowed to terminate its remaining leases of the Grefer property three years early.   The Grefers ultimately agreed to terminate the remaining ITCO leases in exchange for a payment of $23,193.51.

Later, in August 1997, the Grefers filed suit against Exxon, ITCO, and others,

---

[2]      *See* Exxon Mobil's Memorandum in Support of Motion for Partial Summary Judgment on Punitive Damages (Rec. Doc. 65-2) at p. 2.

alleging that they recently had discovered their property was contaminated with NORM from scale on the piping/tubulars that were cleaned and/or maintained on their property by the defendants. They claimed that the defendants knew that NORM contained hazardous, toxic and carcinogenic substances, and was present in both inshore and offshore oil producing wells, but never informed the public of the safety hazard.  The Grefers sought compensatory tort damages for loss of use and remediation of the property, as well as punitive damages pursuant to Louisiana Civil Code article 2315.3. The Grefers also asserted a breach of contract claim against ITCO.  ITCO in turn filed a cross-claim against Exxon, alleging breach of contract, and seeking indemnity and/or contribution relative to any judgment rendered against it.

   After a five-week trial, the jury awarded the Grefers compensatory damages in the amount of $56,145,000, which included $145,000 in general damages and $56 million in restoration costs, as well as punitive damages in the amount of $1 billion. The jury allocated 85% of the fault to Exxon, 5% to ITCO, and 10% to two absent defendants. The jury also found that ITCO was entitled to recover from Exxon all amounts awarded against ITCO.  On appeal, the Louisiana Fourth Circuit Court of Appeal (hereinafter, the "Louisiana Fourth Circuit") reduced the $1 billion punitive award to $112,290,000, but affirmed the judgment in all other respects.  *See Grefer v. Alpha Technical*, 901 So. 2d 1117 (La. App. 4 Cir. 3/31/05) (*Grefer I).*

   The Grefers and Exxon applied for writs of certiorari to the Louisiana Supreme Court; they were denied.  In 2007, however, the United States Supreme Court granted Exxon's application for a writ of certiorari, vacated the judgment previously rendered by the Louisiana Fourth Circuit, and remanded the matter for further consideration of the punitive damages award in light of the Supreme Court's recent decision in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007).

On remand, the Fourth Circuit announced that, "after reviewing [the] record and the *Phillip Morris* decision, we stand by our initial decree with regard to the award of exemplary damages." *See Grefer v. Alpha Technical*, 965 So. 2d 511 (La. App. 4 Cir. 8/08/07) (*Grefer II)*.  Exxon's subsequent applications to the Louisiana Supreme Court and the United States Supreme Court were denied.

<u>**Analysis**</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

As previously stated, because Exxon has satisfied the punitive damages award rendered against it in *Grefer*, it argues that it already has been punished for the harm alleged by Plaintiffs, and  maintains that constitutional due process principles, as set forth by the Supreme Court in *Philip Morris*, prevent a second punitive damages award against it here. Thus, it contends, Plaintiffs' punitive damages claims against it should be dismissed as a matter of law.

In *Grefer I*, which was decided in 2005, the Louisiana Fourth Circuit considered whether the jury's punitive damages award was grossly excessive, and thus violative of the due process protections of the United States Constitution.  As part of this *de novo* review, the *Grefer I* court noted that, although the Grefers claimed only property damage, and no physical harm, the trial court had allowed them to argue and present substantial evidence, over Exxon's objections, of the potential and/or alleged actual harm to other persons who were not parties to the suit and whose claims were not before the jury.  901 So. 2d at 1150.  The appellate court determined that "much of this evidence was irrelevant and, more than likely, confused the jury, contributing to its exorbitant

4

punitive damage award." *Id.*  Referencing the substantial evidence presented to the jury of Exxon's wealth, the court further emphasized that, although relevant, "the company's wealth could not provide an open-ended basis for inflating the punitive award." *Id.*  Thus, finding the $1 billion punitive damage award to be neither reasonable nor proportionate to the amount of harm to the Grefers and to the general damages recovered, the Louisiana Fourth Circuit amended the judgment to impose punitive damages of $112,290,000.00, which was twice the compensatory damages award. In all other respects, the judgment, rendered in accordance with the jury verdict, was affirmed.

Thereafter, in 2007, the Supreme Court, in *Philip Morris,* confirmed that a plaintiff seeking punitive damages may demonstrate the reprehensible nature of a defendant's conduct by showing that the conduct also harmed persons who are *not* parties to the litigation.  549 U.S. at 355. Importantly, however, the Court also instructed that a jury "may *not* go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties." *Id.* (emphasis added).[3]  Additionally, recognizing that ascertaining a jury's intentions could be difficult, as a practical matter, the Supreme Court emphasized that state courts cannot authorize procedures that create an unreasonable and unnecessary risk of any such confusion occurring." *Id.* at 357.  Furthermore, the Court added, in lawsuits where the risk of misunderstanding is significant, constitutional due process requires that states employ appropriate procedures designed

---

[3]     Explaining its decision, the Court emphasized that constitutional due process prohibits states from punishing an individual without giving that person an opportunity to present all available defenses.  *Philip Morris,* 549 U.S. at 354-55.  It additionally reasoned that, with respect to *nonparty* victims, the evidence presented at trial likely would not adequately address necessary inquiries and, thus, lead to speculation by the jury.  *Id.* at 355.  Further, "the fundamental due process concerns to which [Supreme Court jurisprudence] refer – risks of arbitrariness, uncertainty, and lack of notice – [would] be magnified."  *Id.*

to ensure that juries are not seeking to punish defendants for harm to nonparties rather than simply considering that harm in determining reprehensibility.  *Id.*

As previously explained, shortly after the issuance of its 2007 opinion in *Philip Morris,* the Supreme Court vacated the judgment in *Grefer I,* and remanded the matter to the Louisiana Fourth Circuit for further consideration in light of *Philip Morris*.  *See Exxon Mobil Corp. v. Grefer*, 549 U.S. 1249 (2007).  Seeking to comply with this directive, the Louisiana appellate court, on remand, first determined that the trial court's jury instructions correctly set forth the requirements for an award of punitive damages under Louisiana Civil Code article 2315.3 and the factors properly considered in determining a constitutionally appropriate award.  *See Grefer II,* 965 So. 2d at 517-18.  The court then considered whether, in light of *Philip Morris,* Exxon had received all of the constitutional protections available under the federal constitutional due process.  It found that Exxon had. *Id.* at 518, 526-27.

In support of this determination, the Louisiana Fourth Circuit reiterated that sufficient record evidence existed to support the  jury's finding that Exxon had engaged in wanton and reckless conduct.  *Id.* at 518-21.  Then, in part quoting from its original opinion, the court recounted its findings with respect to the constitutional excessiveness of the jury's $1 billion punitive damages award, and reaffirmed its prior reduction of that award to $112,290,000.00, which represented twice the compensatory damages awarded to the Grefers. *Id.* at 521-27.

Thereafter, seeking to mollify any remaining concerns regarding its prior rulings' compliance with the due process principles set forth in *Philip Morris*, the Louisiana Fourth Circuit explained that any reference in its original opinion to harm suffered by nonparties was used merely to demonstrate the reprehensibility of Exxon's conduct. *Id.* at 526.  It further emphasized that

6

"nowhere in the opinion [did it] use any evidence of harm suffered by nonparties" to determine  the amount of punitive damages to be awarded to the Grefers.  *Id.*  The court additionally concluded that in "drastically reduc[ing] the jury's $1 billion punitive damages award," its earlier opinion already had taken into account, and essentially sustained, all of the objections and concerns that Exxon raised, in light of *Philip Morris*, upon remand. *Id.*  Specifically, the court explained that, in reviewing the matter *de novo* on appeal, it had "disregarded the evidence of and references to harm suffered by nonparties and considered only the harm done to the Grefers in determining the amount of the punitive damage award." *Id.* [4]

Lastly, the *Grefer II* court rejected Exxon's argument that the punitive damages award could not stand because Exxon's delay in warning persons of the NORM danger purportedly caused only potential harm to nonparties rather than property damage to the Grefers. *Id.* at 527.  The court first emphasized that Exxon's failure to timely disclose the NORM hazard demonstrated the reprehensibility of its conduct. *Id.*  It then reasoned that, "[a]lthough Exxon's delay did not cause the Grefers physical harm, it increased their economic damages by allowing the continual accumulation of NORM scale on their property." *Id.*  Accordingly, the court concluded that it  properly had

---

[4]     Addressing an assertion made by Exxon's counsel during oral argument, the *Grefer II* court elaborated:

> In determining the reprehensibility of the defendant's conduct for the purpose of awarding exemplary damages, the trier of fact may consider the harm suffered by both parties and nonparties regardless of the type or similarity of harm suffered as a result of that conduct. On the other hand, the trier of fact may consider the nature and extent of the harm suffered by the plaintiff only in determining the amount of exemplary damages to award that particular plaintiff.

*Grefer II*, 965 So.2d at 526-27.

7

considered Exxon's delay in fashioning an appropriate punitive damages award. *Id.*

Returning to Exxon's assertions in the instant action, this Court, having carefully reviewed the parties' submissions, the *Philip Morris* decision, and the Louisiana Fourth Circuit's opinions in *Grefer I* and *Grefer II*, denies Exxon's motion seeking dismissal, as a matter of law, of Plaintiffs' punitive damages claims. In short, Exxon's motion essentially asks the undersigned to simply disregard the Louisiana Fourth Circuit's explicit and well-reasoned determinations, in *Grefer I* and *Grefer II*, that the vastly reduced punitive damages award, equal to two times the compensatory damages award, punished Exxon *only* for the harm suffered by the Grefers – the plaintiffs to that suit.  This, the Court will not do.

Exxon's dissatisfaction with the end result of its appeals to the Louisiana Fourth Circuit in *Grefer* is hardly a permissible basis for collateral attack in this Court.  Nor is its disappointment that both the Louisiana Supreme Court and the United States Supreme Court denied its applications for a writ of certiorari following *Grefer II*.  Furthermore, it is not as if all the plaintiffs to this suit allegedly suffered NORM exposure from the ITCO yard at issue in *Grefer*.  To the contrary, all but nine of the 110 plaintiffs here allege that they were exposed elsewhere. Accordingly, for these reasons, upon the showing made, Exxon's motion for partial summary judgment is denied.

New Orleans, Louisiana, this 27th day of September 2010.

_____
**KURT D. ENGELHARDT**
**United States District Judge**